# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**742**

**CA 11-01872**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND SCONIERS, JJ.

---

ROSCOE BEASON, PLAINTIFF-RESPONDENT,

V                                    MEMORANDUM AND ORDER

DAVID KLEINE, DEFENDANT-APPELLANT.

---

MATTHEW D. NAFUS, SCOTTSVILLE, FOR DEFENDANT-APPELLANT.

HARRIS, CHESWORTH, O'BRIEN, JOHNSTONE & WELCH, LLP, ROCHESTER (CHRISTOPHER T. PUSATERI OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

---------------------------------------------------------------------------------------------

Appeal from a judgment (denominated order) of the Supreme Court, Livingston County (Dennis S. Cohen, A.J.), entered November 30, 2010. The judgment imposed a constructive trust on certain real property and directed defendant to execute a deed transferring the property to plaintiff.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by dismissing the cause of action for fraud and as modified the judgment is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking to impose a constructive trust on certain real property that he transferred to defendant, his stepson, by quitclaim deed dated August 16, 2001. Plaintiff purchased the subject property with his late wife, defendant's mother, in 1966, and they resided there together until her death in July 2001. Shortly after his mother's death, defendant introduced plaintiff to James Dys, an attorney. Dys prepared a revised will for plaintiff, which devised plaintiff's real and personal property to his stepchildren, i.e., defendant and his sister. Dys also prepared a quitclaim deed, which transferred the subject property to defendant, with a life estate in plaintiff's favor. Plaintiff signed both documents.

In support of the cause of action for a constructive trust, plaintiff alleged that he was never advised that the quitclaim deed transferred ownership of the subject property to defendant such that plaintiff would thereafter be unable to divide that property between both of his stepchildren. Plaintiff further alleged that, based on his close and confidential relationship with defendant, he relied upon defendant's assurances that the purpose of the transaction was to protect the property in the event that he required nursing home care and that, upon his death, the property would be divided between his stepchildren. Plaintiff subsequently amended his complaint to add a cause of action for fraud. Following a nonjury trial, Supreme Court

found in favor of plaintiff on both causes of action. Defendant appeals from a judgment imposing a constructive trust on the subject property and directing defendant to execute a deed transferring the property to plaintiff.

We note at the outset that defendant's contention that the court should have recused itself because it allegedly filed an attorney disciplinary grievance against Dys, a witness for the defense, is unpreserved for our review (*see Matter of Rath v Melens*, 15 AD3d 837, 837; *Matter of Nunnery v Nunnery*, 275 AD2d 986, 987). With respect to his remaining contentions on the issue of recusal, defendant " 'failed to allege any basis for mandatory disqualification or recusal [pursuant to Judiciary Law § 14], and we conclude that the court did not abuse its discretion in refusing to recuse itself' " (*Caplash v Rochester Oral & Maxillofacial Surgery Assoc., LLC*, 63 AD3d 1683, 1686). In our view, defendant's allegations of bias by the court against Dys are "too speculative to warrant the conclusion that the court abused its discretion in refusing to recuse itself here" (*Matter of Rumsey v Niebel*, 286 AD2d 564, 565).

Turning to the merits, we note that Black's Law Dictionary defines a constructive trust as "[a]n equitable remedy that a court imposes against one who has obtained property by wrongdoing" (Black's Law Dictionary 1649 [9th ed 2009]). "[I]t is well settled that '[a] constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest' . . . 'In order to invoke the court's equity powers, plaintiff[] must show a confidential or fiduciary relationship, a promise, a transfer in reliance thereon, a breach of the promise, and defendant's unjust enrichment' " (*Delzer v Rozbicki*, 85 AD3d 1722, 1722-1723; *see Sharp v Kosmalski*, 40 NY2d 119, 121). Inasmuch as a constructive trust is an equitable remedy, however, "courts do not rigidly apply the elements but use them as flexible guidelines" (*Moak v Raynor*, 28 AD3d 900, 902; *see Simonds v Simonds*, 45 NY2d 233, 241). "In this flexible spirit, the promise need not be express, but may be implied based on the circumstances of the relationship and the nature of the transaction" (*Moak*, 28 AD3d at 902; *see Sharp*, 40 NY2d at 122).

Viewing the evidence in the light most favorable to plaintiff, we conclude that a fair interpretation of the evidence supports the court's determination to impose a constructive trust under the circumstances of this case (*see generally Home Insulation & Supply, Inc. v Buchheit*, 59 AD3d 1078, 1079; *Treat v Wegmans Food Mkts., Inc.*, 46 AD3d 1403, 1404-1405). We reject defendant's contention that plaintiff failed to establish the promissory element of a constructive trust. Plaintiff testified at trial that, prior to his wife's death, they discussed their intention that, upon their deaths, the subject property should pass to defendant and his sister. Plaintiff communicated that intention to defendant, who promised to help "make that happen." In our view, that statement by defendant "could be viewed as an indefinite express promise" (*Moak*, 28 AD3d at 902; *see also Cinquemani v Lazio*, 37 AD3d 882, 883). Although the testimony of

defendant and Dys contradicted plaintiff's testimony regarding the
promise, the court "had the advantage of observing the witnesses and
assessing their credibility" (*Treat*, 46 AD3d at 1404), and we see no
reason to disturb the court's credibility determination.

Even assuming, arguendo, that the evidence does not support the
existence of an express promise, we conclude that a promise may be
inferred in this case "based on the circumstances of the relationship
and the nature of the transaction" (*Moak*, 28 AD3d at 902; *see Sharp*,
40 NY2d at 122).  The evidence established that the parties enjoyed
the close, confidential relationship of father and son during the
relevant period, and plaintiff relied upon defendant in the management
of his affairs.  Shortly after his mother's death, defendant
introduced plaintiff to Dys and, proceeding on Dys's advice, plaintiff
signed the will and the quitclaim deed.  Although the will devised
plaintiff's real and personal property to his stepchildren, the
quitclaim deed transferred the future interest in the subject real
property to defendant alone.  Plaintiff, who lacks proficiency in
reading and writing, testified that the will and deed were not read or
explained to him.  He signed the documents because he "trusted
[defendant] to do the right thing" and he believed that he was
protecting the property in the event that he required nursing home
care.  After signing the documents, plaintiff continued to believe
that, upon his death, the property would be divided between his
stepchildren in accordance with the wishes of plaintiff and his late
wife.  Plaintiff did not learn about the consequences of the
transaction until nearly seven years later, and he testified at trial
that he would not have signed the deed had he known its effect.

We therefore conclude that plaintiff's transfer of the subject
property to defendant was made in reliance upon defendant's implicit
promise to plaintiff to uphold the testamentary plan of plaintiff and
his late wife and in an effort to protect the property in the event
that plaintiff required nursing home care.  Thus, the imposition of a
constructive trust was proper (*see Johnson v Lih*, 216 AD2d 821, 823;
*Tordai v Tordai*, 109 AD2d 996, 997; *see generally Sharp*, 40 NY2d at
122).

We further conclude that, viewing the evidence in the light most
favorable to plaintiff, there is no fair interpretation of the
evidence to support the court's determination in favor of plaintiff on
the fraud cause of action (*see generally Home Insulation & Supply,
Inc.*, 59 AD3d at 1079; *Treat*, 46 AD3d at 1404-1405).  It is well
settled that, "[t]o establish a cause of action for fraud, plaintiff
must demonstrate that defendant[] knowingly misrepresented a material
fact upon which plaintiff justifiably relied and which caused
plaintiff to sustain damages" (*Klafehn v Morrison*, 75 AD3d 808, 810).
We agree with defendant that no evidence was adduced at trial to
establish that he misrepresented any material fact to plaintiff.
Although plaintiff testified that defendant promised to help him
effectuate his plan to divide the subject property between his
stepchildren, "representations . . . that are not statements of
existing fact but are merely expressions of future expectations or
that are promissory in nature at the time made and relate to future

actions or conduct are insufficient to support a cause of action . . . for fraud" (*Transit Mgt., LLC v Watson Indus., Inc.*, 23 AD3d 1152, 1155; *see Cerabono v Price*, 7 AD3d 479, 480, *lv dismissed* 3 NY3d 737, *lv denied* 4 NY3d 704).  Indeed, no evidence was adduced that defendant misrepresented to plaintiff the contents of the quitclaim deed or its effect.  We therefore modify the judgment by dismissing the cause of action for fraud.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                 Clerk of the Court